Wheeling-Pittsburgh Steel Corp. et al. *v.* The Board of Revision of Taxes and Appeals of the City of Monessen.

Wheeling-Pittsburgh Steel Corp. et al. *v.* The Board of Assessment of Appeals of the County of Westmoreland.

Wheeling-Pittsburgh Steel Corporation and Monessen Southwestern Railroad, a wholly owned subsidiary of Wheeling-Pittsburgh Steel Corporation, Appellants.

Argued October 31, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, DiSalle and Craig. Judges Blatt and MacPhail did not participate.

*Leonard M. Mendelson,* with him *T. Lawrence Palmer,* and *Hollinshead and Mendelson,* for appellants.

*John N. Scales,* with him *Scales & Shaw; John W. Pollins, III,* and *Hammer & Pollins,* for appellee, City of Monessen.

*Daniel Myshin,* for appellee, School District of City of Monessen.

OPINION BY PRESIDENT JUDGE BOWMAN, February 5, 1979:

Pursuant to Section 762(a)4 of the Judicial Code, 42 Pa. C.S. §762(a)4, appellants, Wheeling-Pittsburgh Steel Corporation, and its wholly owned subsidiary,

Monessen Southwestern Railroad (hereinafter referred to jointly as Wheeling or taxpayer), have appealed to this Court from an order of the Court of Common Pleas of Westmoreland County dismissing numerous, consolidated appeals taken to it from decisions of the Board of Revision of Taxes and Appeals of the City of Monessen (hereinafter Monessen or City) and the Board of Assessment of Appeals of the County of Westmoreland (hereinafter Westmoreland or County).

The subject of these assessment disputes is a crescent shaped tract of 143.4 acres located along the Monongahela River in Monessen. Contributing to the disagreement over fair market value of the realty as developed is the presence of a basic oxygen steel manufacturing facility (BOF) and a ''shed,'' valued by the trial court at $89,250, adjacent to the BOF. In a prior case, *Wheeling-Pittsburgh Steel Corp. v. Board of Assessment Appeals of the County of Westmoreland,* 25 Pa. Commonwealth Ct. 194, 360 A.2d 265 (1976) (hereinafter *Wheeling-Pittsburgh*) we concluded that the BOF was not subject to taxation under Section 201 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-201. The trial court in the present case ordered that our prior decision be applied prospectively from the date of our Order, June 16, 1976, and, therefore, no return of any tax paid on the BOF prior to that date was required. It also directed that the shed be included in the fair market valuation. Thus, as to the City's assessments for the triennial periods beginning in 1973 and 1976, Wheeling contests the fair market value as found by the trial court, the inclusion of the shed in that valuation, the failure to exclude the BOF from assessments prior to June 16, 1976, and the figure found by the court to be the proper ratio of assessed value to fair market value in Monessen.

Wheeling also challenges the County's assessment for 1976 and 1977, but not the applied assessment-market value ratio. Nor is the BOF a factor in the County appeals.

Extensive testimony, much of it contradictory, was received by the trial court, which made, *inter alia*, the following findings of fact:

18. That the fair market value of the Wheeling-Pittsburgh property as of January 1, 1973, was $10,374,650, excluding any portions of the BOF facility.

19. That the fair market value of the Wheeling-Pittsburgh property as of January 1, 1976, was $10,374,000, not including any portion of the BOF facility.

. . . .

21. That the fair market value of the shed or structure adjacent to the BOF covering the railroad tracks was $89,250 as of January 1, 1973. This structure is not considered part of the BOF facility as such and, therefore, taxable.

22. That the stated ratio of 37-1/2%, that is, assessed valuation being 37-1/2% of fair market value, is, in fact, the prevailing ratio in the City of Monessen.

There is evidence in the record to support each of these, and consequently we cannot discern any clear error, the prerequisite for substituting our analysis of the record for the trial court's assessment of the testimony as presented. *See Park Drive Manor, Inc. Tax Assessment Case*, 380 Pa. 134, 110 A.2d 392 (1955); *Pocono Downs, Inc. v. Board for the Assessment and Revision of Taxes for Luzerne County*, 11 Pa. Commonwealth Ct. 81, 312 A.2d 452 (1973). It is within the discretion of the trial judge to find the tes-

timony of the City's appraiser more credible than that of Wheeling's real estate experts. Similarly, there is no obvious mistake in the trial judge's decision to accept the City's expert's conclusion on the range of ratios of assessed value to fair market value rather than that of the taxpayer's analyst or to find that the shed adjacent to the BOF is separate and taxable.

However, the failure of the trial judge to make conclusions of law as to fair market value, the applicable ratio of assessed value to fair market value and the tax liability stemming from the assessed value resulting from application of the ratio to the fair market value for each of the tax years on appeal to the lower court requires us to remand this case. This will give the trial court the opportunity to reach the omitted conclusions of law and to reconcile inconsistencies in the opinion and disposition of this case. The conclusions of law suggested by the findings of fact and accompanying discussion would preclude dismissal of the appeals and the seemingly different valuations of the property for city as opposed to county taxation, a result in a single proceeding which cannot be condoned. *Valvoline Oil Company's Appeal,* 149 Pa. Superior Ct. 161, 27 A.2d 715 (1942). Once such conclusions are reached and inconsistencies remedied, the taxpayer's liability, if any, will be established by the trial court. From this legal foundation, Wheeling may make any payments necessary to extinguish its tax liability, and Monessen and Westmoreland may return any excess payments made on the basis of the initial improper assessments timely appealed as directed by, respectively, Section 2521 of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §37521, and Section 518.1 of The General County Assessment Law, added by Section 2 of the Act of December 28, 1955, P.L. 917, *as amended,* 72 P.S. §5020-518.1.

The remaining issue raised by Wheeling is that of the trial court's decision to limit the applicability of our determination in *Wheeling-Pittsburgh* that the basic oxygen steel manufacturing facility located on the Wheeling property is machinery and not subject to real estate tax. The court below concluded that the date on which our decision was rendered, June 16, 1976, marked the date from which the equipment could not be included in property assessments. We disagree. Any determination of a timely appeal from Monessen's inclusion of the machinery in a property assessment should recognize the import of our earlier ruling. Therefore, that portion of the order of the trial court limiting the applicability of *Wheeling-Pittsburgh* is hereby vacated. As this case is already being remanded, the court will have the opportunity to make any other changes in assessments necessary to recognize this aspect of our decision.

The School District of Monessen, also a party to this action, has appealed at this time the order of the trial court denying its motion to quash the taxpayer's appeals to the Court of Common Pleas of Westmoreland County. We agree with the trial court and find the motion to be without merit and, therefore, properly denied.

### ORDER

Now, February 5, 1979, subsections (a), (c), (d) and (e) of the order of the Court of Common Pleas of Westmoreland County are hereby reversed, and the case is remanded in order that the court may reach conclusions of law as to the fair market value of the property for both city and county tax purposes for each of the years in question (taking into account the presence of the shed adjacent to the basic oxygen steel manufacturing facility and the nontaxability of such facility), the ratio of assessed value to fair market

value to be applied, the resulting tax liability, if any, of Wheeling-Pittsburgh Steel Corporation and its subsidiary, Monessen Southwestern Railroad, and the amount, if any, of any taxes paid by Wheeling-Pittsburgh Steel Corporation and Monessen Southwestern Railroad to the City of Monessen and the County of Westmoreland in excess of the amount of the legal assessment.