639 A.2d 1191

Edward T. GLOCK, Jr., Appellant

v.

The COCA–COLA COMPANY and the Philadelphia
Coca–Cola Bottling Company and Owens–
Illinois, Inc. and Real Pizza, Inc.

Edward T. GLOCK, Jr.

v.

The COCA–COLA COMPANY and the Philadelphia
Coca–Cola Bottling Company and Owens–
Illinois, Inc. and Real Pizza, Inc.

Appeal of OWENS–ILLINOIS, INC.

Superior Court of Pennsylvania.

Argued Oct. 20, 1993.

Filed April 4, 1994.

Alan L. Spielman, Philadelphia, for appellant (at 1007) and appellee (at 1226).

E. Parry Warner, Philadelphia, for Owens–Illinois, appellant (at 1226) and appellee (at 1007).

Before BECK, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

Cross-appellants, Edward T. Glock, Jr., and Owens–Illinois, Inc. (O–I),[1] appeal the judgment entered in this matter following the trial court's Order of February 4, 1993. On that date, the court denied plaintiff's motion to mold the verdict to $83,333, but did add delay damages of $18,344.86 to the $25,000 molded jury verdict for plaintiff, making the total verdict $43,344.86. Additionally, the court denied O–I's post-trial motion for entry of judgment.

The basic underlying facts are not in dispute and have been accurately summarized by the trial court.

The instant case was filed by plaintiff in 1984 asserting negligence and strict liability causes of action against four defendants arising out of personal injuries sustained by plaintiff when he was struck in the eye by an exploding soda

---

1. Throughout this Opinion in the interest of clarity, appellant, Edward Glock, will be referred to as plaintiff and Owens–Illinois as defendant.

24

bottle. Prior to trial the plaintiff settled his claims against three of the defendants, Coca-Cola Company, Philadelphia Coca-Cola Bottling Company, and Real Pizza, Inc., by executing joint tortfeasor releases with each defendant. Plaintiff executed the release in consideration for the payment by Coca-Cola Company of $500,000.00, by Philadelphia Coca-Cola Bottling Company of $70,000.00, and by Real Pizza, Inc. of $18,000.00. The case therefore proceeded to trial against the only remaining defendant, Owens-Illinois. Prior to trial, the plaintiff withdrew his claims of negligence against the defendant, Owens-Illinois, and proceeded on the issues of strict liability and punitive damages. Prior to trial the defendant withdrew its claims for contribution, on the basis of the execution of the aforesaid releases. On November 8, 1991, after eleven days of trial, the jury returned a verdict in favor of plaintiff in the amount of $250,000.00, but refused to award punitive damages against the defendant, Owens-Illinois. In accordance with the plaintiff's requested jury instructions and suggested verdict sheet, this Court submitted a jury interrogatory requesting the apportionment of comparative fault of the four defendants. This request was in strict conformity with the holding of *Walton v. Avco Corporation*, [383] Pa.Super. [518], 557 A.2d 372 (1989) which required the apportioning of fault among strictly liable defendants. The jury answered this interrogatory by holding defendant Coca-Cola Company 80% responsible, defendant Philadelphia Coca-Cola Bottling Company 10% responsible, and defendant Owens-Illinois 10% responsible.

(Slip Op., Di Bona, J., 5/27/93, pp. 1-2.)

■ The issue presented by plaintiff/appellant Glock as to the applicability of *Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454 (1992), was resolved against Glock by the trial court and must be resolved against appellant by this Court. By applying *Walton*, plaintiff seeks to obtain a pro-rata share of the jury verdict of $250,000 as opposed to 10 per cent liability assessed to O-I which alone, of the four defendants, did not settle. Glock additionally would limit the pro-rata molding of

the verdict to three defendants who were found liable by the jury and not the four who participated in the settlement. The effect would be to provide payment of the pro-rata amount as to O–I of 33⅓ per cent of the $250,000 (plus Pa.R.C.P. 238 damages as to the O–I share) rather than the 10 per cent awarded by the jury.

This issue turns on whether *Walton* may be given retroactive application as the case was tried and decided on law that preceded *Walton*, which permitted the jury to determine the respective share of liability of the various defendants once strict liability was adjudicated. *Walton* reversed this procedure and held that once the issue of strict liability was resolved against several defendants, the award of damages against them would be apportioned on a per capita or pro rata basis, as a matter of law.

Appellant Glock maintains that pursuant to *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966), any decision that changes a rule of law entered during the pendency of a case up through the appellate process must be applied to that case. Cross-appellant O–I maintains that *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (1983), restricted *Kuchinic* to those cases, civil or criminal, where proper and timely objections had preserved the issue at the time of trial and not, as here, where the issue is raised for the first time on appeal. A final, more definitive analysis of the retroactive application of a new principle was expounded by the Supreme Court in *Blackwell v. Com. State Ethics Comm.*, 527 Pa. 172, 589 A.2d 1094 (1991). There, the question posed by the Commonwealth, which argued against retroactivity of the Supreme Court ruling, was the negative effect it would have on a myriad of cases which appeared before numerous boards and commissions. The Court responded:

> We, however, believe that our decision here limiting application of Blackwell II to the instant appeals and all other pending cases wherein the issue of validity of Section 4(4) *was properly raised and preserved* eliminates these concerns.

*Id.* at 186, 589 A.2d at 1101. In support of that holding, the Court quoted the following language from *Cabeza:*

[W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases *where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.*

*Cabeza, supra* 503 Pa. at 233, 469 A.2d at 148 (emphasis added).

Appellant's reliance on *Kuchinic* in the face of *Cabeza* and *Blackwell* is not convincing and bolsters the efficacy of Justice Nix' dissent in *Cabeza* which pointed out that a sweeping rule of retroactive application is unsupported in Pennsylvania cases. " 'Retroactive application is a matter of judicial discretion which must be exercised on a case by case basis.' *August v. Stasak,* 492 Pa. 550, 554, 424 A.2d 1328, 1330 (1981), citing *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)." *Cabeza, supra* 503 Pa. at 232, 469 A.2d at 148 (Nix, Justice dissenting). The other factor which heavily weighs on retroactivity is whether the charge is constitutionally compelling (as in *Blackwell* ). Where, as here, the effect on private litigation is minimal, retroactive application without proper preservation of the issue in this case would simply provide a windfall to plaintiff.

■ As to the reduction of the comparative damage award of the jury against defendant O–I, which argues that the award should be reduced to $0 because the amount of the settlement agreement far exceeds the jury verdict, we agree with the trial court that the amount of the agreement has no bearing on O–I's liability for damages pursuant to the jury verdict. As pointed out by the trial court in its Opinion:

In *Moran v. G. & W.H. Corson, Inc.,* 402 Pa.Super. 101, 586 A.2d 416 (1991) the Superior Court reviewed the holding of *Charles v. Giant Eagle,* [513 Pa. 474, 522 A.2d 1 (1987) ], and compared the Uniform Contribution Among Tortfeasors Act thereto. The Superior Court held:

'The Supreme Court, in *Charles v. Giant Eagle Markets*, 513 Pa. 474, 522 A.2d 1 (1987), held that a non-settling joint tortfeasor is *not* relieved of responsibility for payment of a proportionate share of damages where the consideration paid by the settling tortfeasor exceeds his or her proportionate share of damages as determined by the jury and the release provides for reduction of the verdict by the *pro rata* share of the settling joint tortfeasor.'

402 Pa.Super. 101 at 106, 586 A.2d 416 at 419.

In addition, the Court held:

'While we confess experiencing some difficulty in construing the provisions of the UCATA and the holding of the Supreme Court in *Giant Eagle,* neither the holding of the Court [nor] its salutary effect in promoting settlements can be questioned:

Contrary to the result urged by appellees, *where a release has been executed, the verdict is reduced only by the proportionate share of the settling tortfeasor.* The actual amount of the release, if it exceeds this sum, is of no consequence in the satisfaction of the judgment of the remaining defendants. The fact that the plaintiff may receive a larger dollar amount in damages than that fixed by the jury does not militate against such an approach. *Charles v. Giant Eagle Markets, supra,* 513 Pa. at 479, 522 A.2d at 3 (emphasis supplied)'

402 Pa.Super. 101 at 110, 586 A.2d 416 at 421.

(Slip Op., DiBona, J., 5/27/93, p. 4.)

The trial court correctly applied the law espoused in the en banc Opinion of *Moran v. G. & W.H. Corson, Inc.,* 402 Pa.Super. 101, 586 A.2d 416 (1991), *alloc. den.,* 529 Pa. 650, 602 A.2d 860 (1992), as quoted above. *Moran* is precisely on point and controls our decision here. Contrary to O–I's position, this panel is not able to reevaluate or reinterpret *Moran* to harmonize it with what it believes to be the holding of *Charles* and section 8326 of the UCATA. That is not a function of a panel of this Court and if a change in interpretation of *Moran*

is to be achieved, it lies with the Supreme Court which passed on the opportunity to do so when it denied allocatur on *Moran* almost five years after its decision in *Charles*.

For the above reasons, we affirm the judgment of the trial court as to the award of damages to appellant Glock, and we affirm the Order of the trial court denying appellant Glock's request to mold the verdict. We also affirm the Order of the trial court denying the motion of cross-appellant O–I to reduce the judgment in favor of Glock to zero.

Jurisdiction relinquished.